(No. 13896.—Decree affirmed.)
J. FRANK PAGE, Defendant in Error, *vs.* EDWARD T. PAGE, Plaintiff in Error.

*Opinion filed December 22, 1921—Rehearing denied Feb. 8, 1922.*

1. PARTITION—*burden is on defendant to prove his claim that parties agreed on certain division line.* In a partition suit between two tenants in common of city lots, on which each has erected a building, one of which extends over the dividing line, the burden is on the defendant to prove his claim that he and the complainant had agreed on a division line midway between the two buildings in the event of a subsequent partition.

2. SAME—*what is a proper division by commissioners where an easement is involved.* In a suit between two tenants in common for partition of city property which has an easement for light and air on one side of the property, the commissioners, in making an equal division according to the statute, may take into consideration the relative values because of the easement, and in dividing the property may give more land to one side to equalize it with the greater value of the other.

3. SAME—*what is necessary to decree for owelty.* The court may award the payment of money as owelty in order to equalize the shares of the parties in a partition suit, but before it can do so it must appear that the requirement of owelty is equitably necessary.

4. SAME—*when grantors of easement are not necessary parties.* The owners of land adjoining city property involved in a partition suit and who have granted an easement for light and air to the tenants in common of the property being partitioned are not necessary parties to the suit.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

EDWARD J. KELLEY, for plaintiff in error.

WORTH E. CAYLOR, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Lots 14, 15 and 16 in block 2 in East End subdivision, sections 12 and 13, township 38, north, range 14, east, in Cook county, Illinois, in the order named, from south to north, each fifty feet wide, front east on Everett avenue, in the city of Chicago. On July 31, 1919, J. Frank Page filed a bill against his brother, Edward T. Page, for the partition of lot 15, the north five feet of lot 14, the south thirty feet of lot 16, together with an easement for light and air over the south eight feet of the north twenty feet of lot 16.

In the year 1908 the two brothers were the owners, as tenants in common, of lot 15 and the south twenty-nine feet of lot 16. In that year the complainant built a dwelling house on the south twenty-three feet of lot 15 and his brother built a dwelling house on the south twenty feet of lot 16 and the north eight feet of lot 15, and since that time they have, respectively, occupied continuously, by their tenants, the houses so built. After the completion of the houses the parties acquired title, as tenants in common, to the north five feet of lot 14 and the south one foot of the north twenty-one feet of lot 16, together with a perpetual easement for the purpose of light and air over the south eight feet of the north twenty feet of lot 16. The bill alleged that at the time the houses were constructed it was agreed that each party should thereafter "hold and own the dwelling house constructed by him separately and not as a tenant in common with the other;" that the complainant was entitled to an undivided one-half of the premises, together with the building constructed by him on the south twenty-three feet of lot 15; that Edward T. Page was entitled to

an undivided one-half of the premises, together with the building constructed by him on the south twenty. feet of lot 16 and the north eight feet of lot 15, and that each of the parties was entitled to an undivided one-half interest in the easement over the south eight feet of the north twenty feet of lot 16.

The defendant, Edward T. Page, filed an answer admitting the ownership of the lots, the erection and occupancy of the houses and the agreement between the complainant and the defendant that each should hold and own his dwelling house as his own property and not as tenant in common with the other, but alleging that prior to the erection of the houses it was agreed between the complainant and the defendant that the dividing line between the property of the complainant and that of the defendant should run midway between the north wall of the complainant's dwelling and the south wall of the defendant's, said line being approximately between the north 17.38 feet and the south 32.62 feet of lot 15, and that should the land ever be divided between the parties this line should be the dividing line between the land so partitioned; that it was further agreed that in case of the partition upon the line between the two buildings, if such division gave the defendant a greater frontage than complainant of the land theretofore owned by them and not subsequently sold, the defendant would pay to the complainant, in cash, the reasonable value of such excess over one-half the land so owned in common by the complainant and the defendant. By his answer the defendant declared himself ready and willing to pay, and offered to pay, the complainant the reasonable value of such land, if any, in excess of one-half of that so owned in common by the complainant and the defendant, which would come to the defendant by virtue of the partition.

The cause was referred to a master to take the evidence, and he made his report finding the issues in favor of the complainant. The court confirmed the master's report and

rendered a decree that each of the parties was entitled to half of the premises, together with the buildings by them respectively constructed, and that each was entitled to one-half of the easement over the south eight feet of the north twenty feet of lot 16, and commissioners were appointed to make partition of the premises. The commissioners reported that they had set off to the complainant in severalty for his interest and share of said premises, (being the one-half part thereof according to the relative value thereof,) the north five feet of lot 14 and all of lot 15 except the north nine and one-half feet thereof, and that they set off to Edward T. Page in severalty for his interest and share in said premises, (being the one-half part thereof according to the relative value thereof,) the north nine and one-half feet of lot 15 and the south thirty feet of lot 16, together with a perpetual easement for the purpose of light and air over the south eight feet of the north twenty feet of lot 16. Exceptions of the defendant to the report of the commissioners were overruled, the report was confirmed, and the defendant, Edward T. Page, has sued out a writ of error.

The only serious contest in the case is as to the alleged agreement fixing the division line between the two owners. The complainant does not question the right of the defendant to have such an agreement enforced in this proceeding but denies that any such agreement was made. The defendant testified that before the work on the building was begun he and his brother and their wives were on the premises; that he and Frank stepped off the lines, and Frank chose to build his house on the south line of lot 15, which was the south line of the property which they then owned in common. Edward chose to build his house on the location where it was subsequently built, and said that the line of division would come up close to his building, and asked what arrangements they should make as to any future division. Frank replied, "We will divide it midway between the two buildings," and Edward inquired what price he

would have to pay for the difference in the number of feet, and they then agreed that the price should be its value at the time of the division. Excavations for the buildings were begun on July 5, 1908, and a short time afterward Edward and Frank were on the premises, together with Otto Besthoff, whose wife was a sister of Edward's wife. Besthoff testified that he asked where the division was, and Frank replied that it was "between these two lots here; right between the runway; between the two houses," and pointed with his hand to a place approximately half way between the two houses. The complainant denied both of these conversations.

William G. Wise, who was an attorney and had acted for both the brothers during the time they were acquiring the property and afterward, testified that three or four years before the filing of the bill he had been in consultation with the two brothers three or four times relative to the division of the property; that Edward wanted five feet more than half of the property, but Frank would not consent because a lot thirty-seven and a half feet wide, which would be the width that was left to him, would not be sufficient for the construction of an apartment building, for which the property had become available, and that Edward did not claim at any time during the negotiations that any agreement had ever been made in regard to the division. Both the complainant and Wise testified that the first time their attention was called to the fact that Edward claimed there was a parol partition was in July, 1919, when they learned Edward had filed an affidavit in which he made such a claim. After the construction of the two houses Edward built a summer house and a chicken house with a yard, which were almost entirely south of the line running midway between the two houses. After Edward disposed of his chickens Frank occupied the chicken house and yard for his dogs for a time, so that the use of the property, except for the houses, was apparently common and gave no effect to any partition.

The burden of proving the agreement was on the defendant. The parties in interest testified directly contrary. Besthoff's corroboration of Edward is offset by Wise's testimony that in the negotiations for a division for several years before the filing of the bill Edward made no claim to the agreement which he now insists upon, or any other agreement in regard to the division of the property. It can not be said that there is a preponderance of evidence in favor of the defendant's claim that an agreement fixing the dividing line was made. The finding of the chancellor was in accordance with the weight of the evidence.

It is alleged in the bill and admitted in the answer that the plaintiff in error and the defendant in error made a warranty deed to James E. Bell and Alanson M. Hews on January 18, 1912, of the north twenty feet of lot 16, and in such deed reserved to themselves an easement over the south eight feet of the north twenty feet of the lot for the purpose of light and air, and that subsequently the terms and conditions were altered and modified by an agreement in writing between the complainant and the defendant and their wives as parties of the first part and Bell and Hews and their wives as parties of the second part, whereby a perpetual easement for the purpose of light and air over the south eight feet of said north twenty feet was conveyed by Bell and Hews and their wives to the plaintiff in error. The plaintiff in error insists that the easement was indivisible, and it was the duty of the court to determine its value, to direct the commissioners to divide the land equally, regardless of the easement, and to award owelty on account of the easement, to equalize the partition. The statute fixes the duty of the commissioners in a partition proceeding to divide the property equally, quantity and quality relatively considered, and if they cannot do this, to value each parcel of the property separately, and the decree was in accordance with the statute. The property was all in one body and the easement was for the benefit of the whole. It could

not be conveyed or valued separately. The land could be valued with the easement or without the easement, but the easement alone could not be valued apart from the land, for it had no existence without the land. The commissioners divided the property by an east and west line, and the north part would naturally get the benefit of the easement and be enhanced in value more than the south part by its existence. This difference in value was taken into consideration by the commissioners, and, quantity and quality relatively considered, they divided the property equally according to their judgment, giving more land on the south side to equalize it with the greater value of the north side. The court may award the payment of money as owelty in order to equalize the shares of the parties in a partition, but before it can do so it must appear that the requirement of owelty is equitably necessary. The decree ordered an equal division, the commissioners reported an equal division, and it does not appear that it was unequal or unjust.

It is insisted that James E. Bell and Alanson M. Hews and their wives should have been made parties to the proceeding because they were the owners in fee of the eight feet in which the easement existed, and were therefore parties in interest whom the statute required to be made parties to a bill for partition. The bill did not seek to partition the eight feet of which they were the owners or any other property in which they were interested. The easement which they had granted was a part of the property of which the plaintiff in error and the defendant in error were tenants in common and in which they were the only parties interested, and there was no more reason for making the grantors of the easement parties than there was of making the grantors of the property which they owned in fee parties defendant.

The decree will be affirmed.        *Decree affirmed.*